UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN WILCOX,

                                  Plaintiff,        Case # 19-cv-01626

v.                                                                     DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
_____

## INTRODUCTION

On January 10, 2017, Plaintiff protectively applied for Disability Insurance Benefits under Title II of the Social Security Act (the "Act") and on January 27, 2017, Plaintiff filed for Supplemental Security Income under Title XVI of the Act. Tr.[1] 19. The Social Security Administration (the "SSA") denied his claim and Plaintiff appeared at a hearing before Administrative Law Judge Roseanne M. Dummer on November 2, 2018. Tr. 39-65. At the hearing, Plaintiff and a Vocational Expert testified. On November 29, 2018 ALJ Dummer issued an unfavorable decision. Tr. 19-34. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-6. Plaintiff then appealed to this Court.[2] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 7, 12. For the reasons that follow, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED, and the ALJ's decision is AFFIRMED.

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 5.

[2] The Court has jurisdiction over this action under 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3).

**LEGAL STANDARD**

**I.      District Court Review**

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

**II.     Disability Determination**

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

**DISCUSSION**

**I.      The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2017, the alleged onset date.  Tr. 21.  At step two, the ALJ found that Plaintiff has the following severe impairments:  narcissistic personality disorder, bipolar disorder, anxiety disorder, and history of marijuana use.  *Id.*  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments.  *Id.*  The ALJ determined that Plaintiff maintained the RFC to perform a full range of work at all exertional levels.  Tr. 23.  However, the ALJ found that Plaintiff had non-exertional limitations including that Plaintiff can:  (i) sustain attention and concentration for two-hour segments in an eight-hour day; (ii) tolerate only task-related and work-oriented interactions with coworkers and supervisors; (iii) tolerate occasional brief and superficial interactions with the public; (iv) understand, remember and carry out instructions for routine, repetitive type, unskilled work; and (v) adapt to changes in those types of work settings.  *Id.*  The ALJ also found that Plaintiff should avoid fast pace high production goal work.  *Id.*

In formulating the RFC, the ALJ gave "little weight" to Plaintiff's treating physician, Leeshi Feldman, M.D., on the basis that Dr. Feldman's opinions were inconsistent with her own progress notes and overall record of conservative care.  Tr. 31.  The ALJ applied "partial weight" to the report from psychological consultative examiner Janine Ippolito, Psy.D., on the basis that the record supported some of Dr. Ippolito's opinions, but the remainder "appeared to be based on the claimant's self-reports and the one-time examination."  Tr. 30.  The ALJ provided "significant weight" to the state agency psychological consultant M. Marks, Psy.D.  *Id.*  The ALJ determined

that Dr. Marks' opinion was supported by the "normal mental status on consultative examination," as well as the "normal mental status findings with some variable mood and chronic well-controlled paranoia in the progress notes of the record." *Id.*

At steps four and five, the ALJ concluded that there were jobs that existed in the national economy that Plaintiff could perform including, for example, working as a dining room attendant, a machine packager, or mail clerk. Tr. 33. As such, the ALJ found that Plaintiff was not disabled.

## II.     Analysis

Plaintiff takes issue with the ALJ's decision on the basis that she (1) failed to properly address and evaluate medical opinions and evidence, and (2) conducted an improper credibility analysis and failed to consider various factors and account for supported conditions and limitations in the RFC findings. *See* ECF No. 7-1 at 13-29. This Court disagrees.

### A.     The ALJ Properly Considered the Opinion Evidence

An ALJ must "evaluate every medical opinion [she] receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997) (citing 20 C.F.R. § 404.1527(d)). An ALJ is not required to "reconcile explicitly every conflicting shred of medical testimony," *Dioguardi v. Comm'r of Soc. Sec.,* 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (citation omitted), and "[t]here is no absolute bar to crediting only portions of medical source opinions." *Younes v. Colvin*, No. 1:14-CV-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015). However, where the ALJ's "RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." *Dioguardi*, 445 F. Supp. 2d at 297 (quoting S.S.R. 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)). The Court finds that the ALJ adequately explained the weighing of the medical opinion evidence here.

First, the ALJ gave "partial weight" to consultative examiner, Janine Ippolito, Psy.D., who opined on March 28, 2017, that Plaintiff had moderate limitations in his ability to use reason and judgment to make work decisions, interact with coworkers, supervisors, and the public, sustain concentration and perform a task at pace, and sustain an ordinary routine and attendance.  Tr. 300.  But she found Plaintiff had marked limitations in regulating emotions, controlling behavior and maintaining well-being.  *Id.*  Dr. Ippolito opined Plaintiff was able to understand, remember, or apply simple and complex instructions, was aware of normal hazards, and took appropriate precautions without limitations.  *Id.*  She also opined that Plaintiff had only mild limitations in maintaining personal hygiene and attire.  *Id.*  She believed Plaintiff had moderate limitations in his ability to use reason and judgment to make work decisions, interact with coworkers, supervisors, and the public, sustain concentration and perform a task at pace, and sustain an ordinary routine and attendance.  *Id.*  In affording this opinion "partial weight," the ALJ recognized that many of Dr. Ippolito's opinions were supported by evidence in the record, but found that the "marked" and "moderate" limitations appeared to be from Plaintiff's self-reports and the one-time exam, rather than based on the overall record.  Tr. 30.  Including, compared to Plaintiff's treating doctor's progress notes.  *Id.*

The ALJ afforded "significant weight" to the state agency psychological consultant, M. Marks, Psy.D., who opined Plaintiff had moderate limitations in several areas of functioning including the ability to interact with others and adapt or manage himself, but could still perform a range of unskilled work.  Tr. 30; Tr. 72.  Dr. Marks also opined Plaintiff had a mild limitation in understanding, remembering, or applying information, and in concentration, persistence, or maintenance of pace.  Tr. 72.  Like Dr. Ippolito's opinion, Dr. Marks opined that Plaintiff would need reduced contact with co-workers and the public but could handle brief and superficial contact

5

with others. Tr. 76. Likewise, Plaintiff's ability to respond appropriately to supervision would be reduced but he would be able to handle ordinary levels of supervision. *Id.* The ALJ credited this opinion as it was internally consistent with normal mental status findings on the consultative exam and in the progress notes of the record. Tr. 30.

The ALJ properly evaluated these medical opinions. Most importantly, as the ALJ acknowledged, the opinions are consistent with the medical evidence of the record. Although Plaintiff experienced periods of mood fluctuation and sporadic episodes of paranoia, the overall record shows Plaintiff's mental status was generally normal, and he was able to control paranoid thoughts. *See, e.g.*, Tr. 422, 427, 433, 437, 439, 450, 463. Indeed, throughout the relevant time period Plaintiff's doctor referred to him as "stable." *See id.* He was able to participate in activities with his girlfriend, spend time with family, travel out of town, take up household projects, and assist with caring for his girlfriend's children. Tr. 439, 454, 456, 511, 517. Plaintiff endorsed paranoia but was able to "reality test" through those thoughts and keep them controlled. Tr. 486. Overall, the medical records show Plaintiff's mood and functioning were stable. He reported consistent improvements in mood and anxiety and was committed to the continuation of treatment. *See, e.g.*, Tr. 452, 486, 518.

Plaintiff takes issue with the "little weight" the ALJ provided to Plaintiff's treating psychiatrist, Leeshi Feldman, M.D., who would have significantly limited Plaintiff's functioning. Dr. Feldman opined on October 18, 2018, that Plaintiff had marked limitations in maintaining social functioning and maintaining concentration, persistence, or pace. Tr. 720. She also opined Plaintiff had moderate restrictions in daily living and had four or more episodes of decompensation within 12 months. *Id.* Dr. Feldman opined that Plaintiff had no useful ability to function in a normal workday and work week without interruptions, and no useful ability to accept instructions

and respond appropriately, get along with others, or deal with normal work stress. Tr. 718. As the ALJ explained, the opinion is inconsistent with Dr. Feldman's own progress notes which indicate normal mental status findings. Dr. Feldman's progress notes reference one incident of hallucination, but overall, Plaintiff was stable and able to participate in various activities throughout the time period at issue. Tr. 461. The progress notes do not mention any major concerns which would reasonably lead to significant limitations. As such, there is simply insufficient support for the extremely limited restrictions Dr. Feldman's opinion provides.

Plaintiff tries to paint a different picture of his limitations by making conclusory statements regarding the opinions provided by Dr. Feldman and Dr. Ippolito, but Plaintiff is unable to point to any specific medical records to support the need for more severe restrictions. "If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." *Graham v. Berryhill*, 397 F. Supp. 3d 541, 550 (S.D.N.Y. 2019) (quoting another source). As discussed, there was substantial evidence to support the ALJ's conclusions about the medical opinion evidence here.

### B.     The ALJ Properly Weighed Plaintiff's Testimony

Plaintiff insists that the ALJ improperly evaluated Plaintiff's testimony regarding his limitations and daily activity. However, "[a] federal court must afford great deference to the ALJ's credibility finding, since 'the ALJ had the opportunity to observe [the claimant's] demeanor while [the claimant was] testifying.'" *Kessler v. Colvin*, 48 F. Supp. 3d 578, 595 (S.D.N.Y. 2014) (quoting *Marquez v. Colvin*, No. 12 Civ. 6819(PKC), 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013)). "Accordingly, so long as the credibility determination is supported by substantial evidence, this Court may not disrupt the ALJ's findings." *Id.*

The ALJ's analysis of Plaintiff's credibility was supported by substantial evidence. Plaintiff testified that he stays in bed until the earlier part of the afternoon and has more good days than bad. Tr. 49. He testified that if he was "lucky enough to get reprieve" he would do housework, laundry, and go shopping. Tr. 50. He also testified he would use the internet. *Id.* However, contrary to his testimony, the record also shows Plaintiff took part in numerous other daily activities. For example, Plaintiff indicated to Dr. Ippolito he could prepare simple meals, manages his own finances, and drive. Tr. 300. His progress notes from appointments with Dr. Feldman demonstrate he took guitar lessons, played racquetball, participated in creative writing regularly, and worked on remodeling his attic. Tr. 469, 435, 300, 488. Plaintiff also went on trips with his girlfriend, went to plays and movies with his girlfriend, and attended a wedding. Tr. 439, 517, 475, 472.

While Plaintiff asserts the ALJ failed to consider all factors under SSR 16-3p in evaluating the Plaintiff's credibility, it is unnecessary for the ALJ to explicitly do so where, as here, it is clear to the subsequent reviewers the basis for allocating lesser weight to Plaintiff's statements and the evidence of the record supports the ALJ's decision. *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). Here, the ALJ's decision discusses the significant evidence conflicting with Plaintiff's testimony. The record is filled with progress notes listing Plaintiff's weekly activities and consistency in participation from one week to the next. It was therefore not error for the ALJ to find that such reported activities required, to the Plaintiff's credit, social interaction and concentration. Tr. 29. Thus, it was not improper for the ALJ to limit the weight credited to Plaintiff's testimony. *Id.*

### C. The ALJ Properly Considered Plaintiff's Additional Complaints and the Record as a Whole

Plaintiff also claims that the ALJ failed to evaluate the limitations from Plaintiff's additional conditions including delusions, psychosis, panic attacks, and social isolation and failed to account for Plaintiff's off-task time. *See* ECF No. 7-1 at 25, 27. However, Plaintiff is unable to direct this Court to evidence in the record to show he experienced or was treated for any episodes of such symptoms during the relevant time. The ALJ discussed in detail, Plaintiff's medical records from pre-disability though the relevant time period. *See* Tr. 24-25. While it is true that the record shows Plaintiff experienced two significant periods of delusions and psychosis in 2013 and 2014, there is no evidence in the record that such episodic symptoms occurred following the disability onset date in 2017. *See* Tr. 24. Rather, as stated previously, Plaintiff's medical records show stable mood, improvements in his overall mental health, and the ability to participate in various activities without issue. *See, e.g.*, 427, 429, 435, 450, 463, 511, 517. There is likewise no evidence in the record to support Dr. Feldman's assertion that Plaintiff would be off task 20% of the time. *See* Tr. 720. Rather, the ALJ noted that based on the cumulative medical record, there was no indication that Plaintiff would require more than customary work breaks, which the vocational expert indicated was tolerated in the workplace. Tr. 33 (the vocational expert also testified up to 10% off task time would be tolerated in the workplace). This is again supported by Plaintiff's own testimony and his statements to treating doctors of his activities during the relevant time period. *See* Tr. 29.

Plaintiff attempts to set forth additional arguments regarding the ALJ's failure to adequately consider Plaintiff's various conditions and limitations, but the arguments are unclear. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United*

9

*States v. Zannino*, 895 F. 2d 1, 17 (1st Cir. 1990). As such, the Court will not undertake to evaluate each of Plaintiff's conclusory assertions here.

Finally, the ALJ's RFC is supported by substantial evidence. The RFC limited Plaintiff to unskilled work wherein he could sustain attention and concentration for two-hour segments. Tr. 23. The ALJ limited Plaintiff's interactions with others to task-related and work-oriented with supervisors and co-workers, but only occasional brief and superficial interactions with the public. *Id.* The RFC also limited Plaintiff to work that was not fast pace or high production goal. *Id.* This aligns with the opinion evidence of the record including Dr. Marks and Dr. Ippolito and aligns with the overall medical record of Plaintiff's treating psychiatrist, Dr. Feldman.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 7, is DENIED, the Commissioner's motion for judgment on the pleadings, ECF No. 12, is GRANTED, and the complaint is DISMISSED WITH PREJUDICE. The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: November 3, 2020
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court